IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *MICHELLE M. REDD*, | ) |
|     Plaintiff, | ) |
| | ) |
| *v.* | ) |
| | ) |
| | ) |
| *HEALTHCARE REVENUE RECOVERY GROUP, L.L.C.,* | ) |
| *D/B/A ARS ACCOUNT RESOLUTION SERVICES*, | ) |
|     Defendant. | ) |

**PLAINTIFFS MICHELLE REDD'S RESPONSE TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ms. Redd, by her counsel Paúl Camarena, respectfully responds to the Defendant's Motion for Summary Judgment as follows:

Introduction.

The State of Illinois administers "All Kids Moms & Babies," a medical health insurance program for pregnant women and their children. According to the State of Illinois, "Moms & Babies pays for both outpatient and inpatient hospital services for women while they are pregnant" and "[t]here are no co-payments or premiums in Moms & Babies[1]." The parties agree that, at the relevant time, "All Kids Moms & Babies" was covering Ms. Redd[2]; Ms. Redd testified that she visited Midwest Emergency Associates ("MEA") for a prenatal visit[3]; and the parties agree that Ms. Redd provided her "All Kids" medial health insurance card to MEA and asked MEA to submit its bill to that medical health insurance carrier[4].

---

[1] ECF 31-4 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit D) (State of Illinois website), p. 2.
[2] ECF 31 (Joint Statement of Undisputed Material Fact), p. 2, ¶ 8.
[3] Deposition of Ms. Redd, p. 42, ll. 20 – 22 (ECF 31-2 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit B), p. 14):
    Defense counsel:     Do you remember what you would have gone to Midwest Emergency Associates for in 2016?
    Ms. Redd:     It would have to be for prenatal
[4] ECF 31 (Joint Statement of Undisputed Material Fact), p. 2, ¶¶ 7 & 11.

However, MEA still contracted the Defendant to collect Ms. Redd's bill and the Defendant reported to credit bureaus that Ms. Redd owed this bill[5]. Ms. Redd disputed the Defendant's reported information with the credit bureaus, but the Defendant continued to report that information[6]. Ms. Redd has filed a claim alleging that the Defendant violated the Fair Credit Reporting Act, but the Defendant raises several defenses, which Ms. Redd addresses below.

<u>Ms. Redd has put up evidence of damages.</u>

Ms. Redd claims that the Defendant violated the FCRA by willfully failing to reasonably investigate her dispute; but the Defendant argues that Ms. Redd's claim must fail because even "[a]ssuming arguendo, that HRRG willfully violated the law (and there is absolutely no evidence that it did), she *must* show proof of actual damages." (ECF 23 (Defendant's Motion for Summary Judgment), p. 6 (emphasis in original).) However, the Defendant overlooks that the FCRA, at Subsection 1681n(a)(1)(A), provides that a party that willfully fails to comply with the law is liable for either "actual damages sustained by the consumer as a result of the failure **or** damages" set by the statute. (Emphasis added.) Thus, the Defendant is liable for either Ms. Redd's actual damages or for statutory damages, and Ms. Redd does not need to establish her actual damages to maintain her claim.

Nevertheless, Ms. Redd has established her actual damages. Ms. Redd testified that the Defendant's very failure to reasonably investigate caused her to experience so much stress that she could not sleep[7]; and the Defendant's own Joint Statement of Undisputed Material Facts

---

5 ECF 31 (Joint Statement of Undisputed Material Fact), p. 3, ¶¶ 15 & 16.
6 ECF 31 (Joint Statement of Undisputed Material Fact), p. 4, ¶¶ 23 & 28.
7 Deposition of Ms. Redd, p. 83, ll. 13 – 19 (ECF 31-2 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit B), p. 24):
   Defense counsel:   [The complaint] says that th[e Defendant's] failure to conduct a reasonable investigation caused you to experience so much stress that you experienced difficulty sleeping. How many times did this cause you so much stress that you couldn't sleep?
   Ms. Redd:   A lot.
Id, p. 85, ll. 3 – 6 (ECF 31-2 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit B), p.

concedes that "Plaintiff experienced stress, difficulty sleeping, and emotional distress." (ECF 31, p. 5, ¶ 38.) Ms. Redd further testified that the Defendant's failure to investigate and her inability to sleep caused her to "stay up too late that [she] couldn't go to work the next day" and she "missed work[8]." Ms. Redd additionally testified that, because of the Defendant's failure to comply with the FCRA, she used her time to repeatedly dispute the Defendant's reported information and that, had the Defendant complied with the FCRA, she would have used this time to work[9].

The Defendant asserts that Ms. Redd employer's "records conclusively demonstrate that she was not working *at all* during the time frame she purports she missed shifts because of lost sleep and/or sending letters." (ECF 23 (Defendant's Motion), p. 6 (emphasis in original).) This is not so. First, the Defendant never inquired about the time frame that Ms. Redd missed shifts

---

24):
  Defense counsel: how many times were you caused to lose sleep because of [the Defendant's] alleged failure to investigate?
  Ms. Redd: At least three.

8 Deposition of Ms. Redd, p. 122, ln. 23 – p. 123, ln. 6 (ECF 31-2 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit B), p. 34):
  Defense counsel: Can you give me a little bit more detail as to like the sleep you missed?
  Ms. Redd: Well, not within a couple of hours. I mean, eventually -- you know, you can't stay up for 24 hours, but I did stay up too late that I couldn't go to work the next day.
  Defense counsel: Okay. You missed work?
  Ms. Redd: Yeah.

9 Deposition of Ms. Redd, p. 124, ln. 15 – p. 125, ln. 14 (ECF 31-2 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit B), p. 34):
  Counsel: you disputed this information in June of 2020 and it didn't come off your credit report, is that correct?
  Ms. Redd: Yes.
  Counsel: Okay. And then you had it disputed again, correct?
  Ms. Redd: Yes.
  …
  Counsel: that hour that you spent sending out these letters, had you -- had you not used that hour to send out these letters, would you have been working?
  Ms. Redd: Yes. I could have picked up another shift.
  Counsel: Okay. Would you have picked up work had you not spent that hour sending out these letters?
  Ms. Redd: Yes.

because of lost sleep and, hence, Ms. Redd never testified about that particular time frame. Also, Ms. Redd testified that she disputed the Defendant's information by sending letters after June 2020[10], the Defendant has conceded that it received a dispute in October 2020[11], and Ms. Redd employer's records conclusively demonstrate that, in fact, she was working during the fourth quarter of 2020 (October – December 2020).

      The Defendant subpoenaed Ms. Redd employer's records and these records establish that Ms. Redd works part-time and that her year-to-date hours totaled 205.50 in the third quarter of 2020[12]. These records also establish that her year-to-date hours totaled 289.50 in the fourth quarter of 2020[13] and that, therefore, she worked 84 hours during this fourth quarter of 2020. These records additionally establish that she worked just 18 hours during December 2020[14] and, thus, she worked 66 hours during October and November 2020. The parties agree that Ms. Redd "works roughly twelve hours a week[15]," and because November 2020 had 4 full weeks and one day, Ms. Redd must have worked roughly 18 hours in October 2020, the very month that the Defendant received the later dispute. Hence, Ms. Redd employer's records conclusively demonstrate that, in fact, she was working during the time frame she purports she missed shifts because of sending letters disputing the Defendant's information[16].

---

10 *Supra*, fn 9.
11 ECF 31 (Joint Statement of Undisputed Material Fact), p. 4, ¶ 23.
12 ECF 31-12 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit L), p. 7.
13 ECF 31-12 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit L), p. 8.
14 ECF 31-12 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit L), p. 4.
15 ECF 31 (Joint Statement of Undisputed Material Fact), p. 6, ¶ 43.
16 Ms. Redd recognizes that her counsel conceded that "Michelle Redd did not work at all in … October, or November of 2020 for **Divine Home Health Care Services**." ECF 31 (Joint Statement of Undisputed Material Fact), p. 6, ¶ 44. (Emphasis added.) Ms. Redd's counsel should not have made this concession, as her employer's records plainly establish that she did work in October or November of 2020. Nevertheless, Ms. Redd counsel's concession was not inaccurate because she "did not work at all in … October, or November of 2020 for **Divine Home Health Care Services**." Instead, Ms. Redd worked in October and November of 2020 for a "Devine Home Care Services." (ECF 31-12 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit L), pp. 4 – 8.)

<u>A reasonable jury could find that the Defendant's investigation was not reasonable.</u>

The Defendant's own exhibit establishes that, in September 2016, Ms. Redd received medical treatment from the Defendant's client[17]; and, in June 2017, Ms. Redd contacted the Debt Collector-Defendant, she stated to the Defendant her medical treatment had been covered by her medical insurance[18], and she forwarded a copy of her medical insurance card to the Defendant[19]. Nevertheless, by 2018, the Defendant was reporting to credit bureaus that Ms. Redd owed this medical debt[20].

Ms. Redd stated, under oath, that in July 2020 and again in September 2020, she paid a third-party to dispute with TransUnion the Defendant's reported information and she directed this third-party "to assert to TransUnion that the tradeline balance was overstated because [the Defendant's client] failed to submit the account to [her] insurance carrier as [Ms. Redd and the Defendant's client] had agreed[21]." Although the Defendant has conceded that it "received <u>dispute*s*</u> from the bureaus[22]," the Defendant has absolutely no records regarding any investigation into Ms. Redd's disputes[23].

Nevertheless, the Defendant insists that "[t]he court can determine as a matter of law that an investigation was reasonable" because "the reasonableness of the defendant's investigation is beyond question." (ECF 23 (Defendant's Motion), p. 10.) The Defendant supports its insistence

---

17 ECF 31-5 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit E), p. 6 (listing a "Srv" date of "09/04/16").
18 ECF 31-5 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit E), p. 11 (entry of "06/23/17" noting that the Defendant received an "inbound call," during which Ms. Redd "state[d] that she was [medical insurance] eligible at the time of service").
19 ECF 31-5 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit E), p. 11 (entry of "06/26/17" noting that the Defendant "rcvd [received ]copy of Illinois Care Health Ins[urance] Card effective 06/01/2016."
20 ECF 31 (Joint Statement of Undisputed Material Fact), p. 3, ¶ 16.
21 ECF 31-3 (Joint Statement of Undisputed Material Fact, Defendant's Exhibit C), p. 2, ¶ 4.
22 Ms. Redd's attached Exhibit 1 (Ms. Redd's production, which is Defense counsel's email to Ms. Redd's counsel) (emphasis added here) (highlighting added to Exhibit).
23 Ms. Redd's attached Exhibit 2 (Defendant's Response to Ms. Redd's Request for Production) (highlighting added to Exhibit).

that its investigation was reasonable by baldly asserting that "the documents produced by HRRG demonstrate it took actions to confirm the accuracy of Plaintiff's accounts." (ECF 23, p. 8.) However, a defendant should not be able to claim that it has no available "documents pertaining to any investigation" in response to a plaintiff's request for discovery[24] and then claim that its documents "demonstrate it took actions to confirm the accuracy of Plaintiff's accounts" in its Motion for Summary Judgment.

The instant case presents issues similar to those in *Humphrey v. TransUnion LLC,* 18-1584 (7th Cir. Jan. 8, 2019). In *Humphrey*, at 9, the Seventh Circuit noted that, "[a]lthough [the defendant] contend[ed] that the CRAs [credit reporting agencies] did not provide it with sufficient information about Humphrey's dispute, the record shows that Humphrey sent letters describing the nature of his disagreement to both the CRAs and [the defendant] and called [the defendant] about the dispute." The Seventh Circuit also stated that "[t]he CRAs were required to forward to [the defendant] 'all relevant information regarding the dispute that the agency has received from the consumer.' 18 U.S.C. §1681i(a)(2). [Thus, a] reasonable jury could infer that [the defendant] had sufficient notice of the nature of the dispute." *Id*. Hence, the Seventh Circuit held that, "[a]t the very least, Humphrey ha[d] created a genuine dispute about the information that [the defendant] had and used as the basis of its investigation," and the Seventh Circuit reversed the district court's granting of summary judgment to that defendant. *Id*.

In the instant case, the Defendant's own exhibit establishes that Ms. Redd contacted the Defendant, stated her medical treatment had been covered by her medical insurance, and forwarded a copy of her medical insurance card to the Defendant. Also, Ms. Redd has stated, under oath, that she paid a third-party to dispute the Defendant's information and she directed

---

24 *Supra*, fn 23.

this third-party to assert that the tradeline balance was overstated because the Defendant's client failed to submit the account to her insurance carrier. Given that the Defendant has conceded that it received "disputes," but has absolutely no records regarding any investigation into those disputes, "[a]t the very least, [Ms. Redd] has created a genuine dispute about the information that [the Defendant] had and used as the basis of its investigation," *Humphrey*, at 9, and this Court should deny summary judgment to the Defendant on this basis.

<u>A jury could find that the the Defendant's violations were repeated and willful.</u>

Ms. Redd claims that the Defendant violated Subsection 1681n(a), which prohibits only a party's "willful[ ] fail[ure] to comply with" the FCRA. The Defendant argues that Ms. Redd's claim must fail because "[t]here certainly is no evidence demonstrating that HRRG knew that any of its conduct violated the FCRA." (ECF 23, p. 12.)

However, the Supreme Court has held that willful violations of FCRA include violations committed in reckless disregard of a company's obligations under the FCRA. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007). Also, "[c]ourts have found repeated violations of the FCRA to constitute evidence of a willful violation of the FCRA." *Mattiaccio v. DHA Group, Inc.*, 87 F. Supp. 3d 169, 182 (D.D.C. 2015) (string citation omitted).

In the instant case, if the Defendant disregarded its obligations under FCRA, the Defendant cannot deny that it did so at least repeatedly. The Defendant's exhibit establishes that, in 2017, Ms. Redd stated to the Defendant that her medical treatment had been covered by her medical insurance and she forwarded a copy of her medical insurance card to the Defendant. Ms. Redd stated under oath that, in July 2020 and again in September 2020, she directed a third-party to assert to a credit bureau that the Defendant's tradeline balance was overstated because the Defendant's client failed to submit the account to her insurance carrier. The Defendant has

conceded that it received another dispute in October 2020, and the Defendant has conceded that, despite having received "disputes" from credit bureaus, it continued to report its information. Thus, a reasonable jury could find that the Defendant's violations were "in reckless disregard of [the] company's obligations" or were repeated; and the Court should deny the Defendant's motion on this basis.

        Respectfully submitted,
        Plaintiff's, Michelle Redd's, Counsel
        North & Sedgwick, L.L.C.
by:    */s/ Paúl Camarena*
        Paúl Camarena, Esq.
        500 So. Clinton, No. 132
        Chicago, IL 60607
        paulcamarena@paulcamarena.com
        (312) 493-7494

# Exhibit 1

**From:** Krista Easom <keasom@grsm.com>
**To:** Paul Camarena <paulcamarena@paulcamarena.com>
**Cc:** Paul Gamboa <pgamboa@grsm.com>
**Sent:** Friday, July 30, 2021, 10:33:03 AM CDT
**Subject:** RE: Atkins v HRRG Rule 26 Disclosures(60104581.1).pdf

On Michelle Redd? Yes we received disputes from the bureaus but we do not have copies since notifications are electronic.

I believe the only issue that remains in the Redd case is your allegation that we failed to conduct a reasonable investigation after the dispute. Are you able to get an amended complaint on file to remove those other two counts and provide dates for Ms. Redd's deposition?

Thanks,

Krista

---

**From:** Paul Camarena <paulcamarena@paulcamarena.com>
**Sent:** Friday, July 30, 2021 10:29 AM
**To:** Krista Easom <keasom@grsm.com>
**Cc:** Paul Gamboa <pgamboa@grsm.com>
**Subject:** Re: Atkins v HRRG Rule 26 Disclosures(60104581.1).pdf

Thank you, were you able to speak with your client about a concession that it received plaintiff's disputes from a CRA?   (I formally inquired about this in my discovery request, but they failed to respond.). Thx

# Exhibit 2

proportional to the needs of the case. HRRG also objects to this request on the grounds that it seeks information that is confidential and/or proprietary, or otherwise constitutes a trade secret. Subject to and without waiving the foregoing Objections, None are available.

3. Any non-privileged documents pertaining to any investigation conducted by Defendant in response to any communication from any consumer reporting agency regarding any dispute by Plaintiff.

**RESPONSE**: HRRG objects to this Request for Production to the extent it seeks information that is confidential and/or proprietary, or otherwise constitutes a trade secret. Subject to and without waiving the foregoing Objections, None available.

**HRRG'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S INTERROGATORIES**

Healthcare Revenue Recovery Group, LLC ("HRRG"), in answering Michele Redd's First Set of Interrogatories, states as follows:

1. Please explain in detail the actions that Defendant performed in response to any communication from any consumer reporting agency to Defendant regarding any dispute by Plaintiff.

**RESPONSE**: HRRG objects to this Interrogatory to the extent it seeks information that is confidential and/or proprietary, or otherwise constitutes a trade secret. HRRG additionally objects to the instant interrogatory to the extent that it calls for the identification of information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing Objections, answering upon information and belief, HRRG reviewed all relevant information provided by the credit reporting agency and verified the debt.

2. Please provide the names of Defendant's agents who performed any action in response to any communication from any consumer reporting agency to Defendant regarding any dispute by Plaintiff.

**RESPONSE**: HRRG objects to this Interrogatory to the extent it seeks information that is confidential and/or proprietary, or otherwise constitutes a trade secret. Defendant additionally